UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Brice Lejeune                                    Civil Action No. 6:09-CV-0194

versus                                           Judge Tucker L. Melançon

Omni Energy Services Corp., et al                Magistrate Judge Hanna

### MEMORANDUM RULING

Before the Court are two related Motions for Summary Judgment filed by defendants

Omni Energy Services Corporation and Preheat, Inc. (jointly referred to as "Omni") [Rec.

Doc. 57; 77], plaintiff Brice Lejeune's Oppositions thereto [Rec. Doc. 62; 81] and Omni's

Reply [Rec. Doc. 74].   For the following reasons, defendants' motions for summary

judgment will be granted.

### I. Background

Plaintiff, Brice Lejeune, went to work for Preheat, Inc. in approximately 1994, and

in February 2006, Omni purchased Preheat. *R. 57-2, ¶ 1.* Lejeune remained employed at

Omni as the Stress-Relieving Division Manager.   As part of the sale transaction, a Key

Employee Escrow Agreement was executed providing that certain payments would be made

to key Preheat employees, including plaintiff, if they were still employed on the third year

anniversary of the Agreement.  In July 2007, plaintiff was confronted by Omni management

about rumors that he was buying drugs at work. *R. 57-2, ¶¶ 3 & 4.*  Plaintiff admitted that

1

he had been purchasing prescription pain medication, 200 pills twice a month, from a coworker and that he had become addicted to the medicine. *Id.* Omni immediately terminated the employee selling the drugs to plaintiff. *Id. at 5.* Rather than terminating plaintiff, Omni permitted plaintiff to take a 30 day leave of absence to seek rehabilitation. *Id. at 6.* When plaintiff advised Omni that he was not ready to return to work, he was allowed to take additional unpaid leave for his rehabilitation. *Id.* Plaintiff began treatment for substance dependence with Dr. Stanley Hoover on August 28, 2007. *R. 57, Exh. D.* On November 16, 2007, Dr. Hoover released plaintiff to return to work. *Id.* In late November 2007, plaintiff indicated to Omni that he was ready to return to work. *Id. at 8.* Within the week he returned, plaintiff was told that because he had been on extended leave of absence, he was required to be evaluated and cleared by the company doctor before he could officially return to work. *Id. at 9; Exh. A, Plaintiff's Depo., pp. 86-89; Exh. C, Declaration of Lisa Jacob, # 4.* Plaintiff agreed to the return-to-work physical which was performed by Verne Thibodeaux, M.D., in December 2007. *Id. at 10.* Dr. Thibodeaux was advised that plaintiff would be working in a sales position driving a company vehicle. *R. 57, Exh. E.* Dr. Thibodeaux did not clear plaintiff to return to work because he had balance and coordination problems. *Id. at 10; Exh. E.* Dr. Thibodeaux requested a full work-up of plaintiff, in part because he was concerned about whether plaintiff's balance issues were caused by either Suboxone, the medication prescribed to alleviate plaintiff's opiate addiction, or Xanax, which plaintiff was taking for anxiety. *Id.* Omni placed plaintiff back on unpaid medical leave.

2

*Id. at 11.*

Thereafter, plaintiff's treating physician, Dr. Stanley Hoover, referred him to a neurologist, Dr. Shelly Savant. *Id. at 13.* In completing Dr. Savant's "New Patient Questionnaire" on December 26, 2007, plaintiff stated that his problem was "instability while standing or walking," and that the problem had existed for a couple of years. *Id. at 14; Exh. F.* In her report concerning plaintiff's January 2, 2008 examination, Dr. Savant noted "impaired tandem walk" and "[d]ifficulty with tandem gait.... [o]therwise upright and steady with respect to his gait."[1] *Id. at 16; Exh. G.* Dr. Savant diagnosed plaintiff with ataxia and opined that he could return to work, but restricted him from driving and climbing ladders and ordered him to adhere to fall precautions. *Id.*

Also on January 2, 2008, Dr. Thibodeaux again administered the neurological part of the return-to-work physical and plaintiff again experienced balance problems. *Id. at 17.* A handwritten note also dated January 2, 2008, indicates that Dr. Thibodeaux spoke to Dr. Savant and she "agrees [plaintiff] is a greater risk for falling than the normal person." *Id.; Exh. J.* In his sworn declaration, Dr. Thibodeaux stated that when he spoke with Dr. Savant that day, she informed him that plaintiff was scheduled for an MRI and she felt plaintiff possibly could work. *Id.; Exh. E.* In response, Dr. Thibodeaux expressed continued concerns about plaintiff's ability to return to work and he and Dr. Savant agreed to speak after the MRI. *Id.* When Dr. Thibodeaux spoke with Dr. Savant "a week or so later," she

---

[1] In her April 8, 2008 examination report, Dr. Savant opined that plaintiff's gait difficulties were likely a result of his drug abuse. *R. 62-10, p. 15.*

3

explained that as plaintiff's MRI results were negative and he had passed a driving test, she would remove the driving restriction but would not remove plaintiff's restriction of climbing ladders. *Id. at 18*. Dr. Savant also told Dr. Thibodeaux that plaintiff had reported his symptoms were getting better. *Id.; Exh. G*.

Dr. Thibodeaux reported to Omni that, based on his conversation with Dr. Savant, he had concluded that plaintiff should be safe driving and working while taking his medication. *Id. at 20; Exh. E*. During that same time, Omni was provided with information that plaintiff had cut back on his Xanax medication. *Id. at 19; Exh. K*. In light of the foregoing developments and plaintiff's reported improvement, Omni asked Dr. Thibodeaux to provide another independent examination of plaintiff. *Id.; Exh. E*. Upon advising plaintiff that he needed to return for another evaluation, plaintiff refused to do so. *Id*. In a January 17, 2008 e-mail, Dr. Savant told plaintiff that he needed to undergo the examination with Dr. Thibodeaux. *Id., Exh. 19, 20; R. 57, Exh. A, p. 122, Exh. N*. Plaintiff told her that his "anxiety/stress makes my balance much worse," to which Dr. Savant responded, "[Dr. Thibodeaux] would be obligated to do this regardless of his affiliation with the clinic. It's a standard part of the neuro exam. I need to do it too and will write a note for you after we sit down with each other again." *Id*. Plaintiff continued to refuse to return to Dr. Thibodeaux for another evaluation and on January 22, 2008, Omni discharged him from employment. *Id. at 26; Exh. A.; E*. On February 2, 2009 the Board of Directors of Omni officially determined that plaintiff was "'terminated for cause' within the meaning of

Paragraph 3(b) of the Key Employee Escrow Agreement."   *R. 6-1, Key Employee Escrow Agreement.*

On March 3, 2008, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which he indicated that he was claiming discrimination based on age and disability. *R. 57-5, Exh. L.* More specifically, plaintiff indicated that he had "No disability but the organization treats me as if I am disabled." *Id.* Plaintiff further stated his disabilities were: (1) "addiction to prescriptions medicines. Successfully treated for condition by physician and other professionals"; (2) "ataxis of unknow [sic] origin diagnosed after 1/22/07"; and, (3) "Prostate Cancer diagnosed during this period." *Id.* On October 28, 2008 Lejeune filed an EEOC Charge of Discrimination with the Louisiana Commission on Human Rights stating, "The reason given for my discharge was that I did not recover from my medical condition quickly enough. I believe that I have been discriminated against in that I am being regarded as having a disability in violation of the Americans with Disabilities Act of 1990." *Id.*

Lejeune filed this lawsuit on February 4, 2009 in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, alleging damages under "disability discrimination and accommodation laws" and "age discrimination laws" as well as state contract and detrimental reliance claims related to the Key Employee Escrow Agreement provided in the stock sale of Preheat to Omni. *R. 1.* On February 9, 2009, defendants removed plaintiff's action to this Court. *R. 3.* On February 21, 2009, a Bill Of Interpleader related to plaintiff's state claims

5

under the Key Employee Escrow Agreement was filed by Jeff W. Elmore as Escrow Agent which added 14 defendants-in-interpleader.[2]  *R. 6.*  In an order dated November 5, 2009, the Court stated that the March 22, 2010 trial of this matter would be limited to plaintiff's federal claims for age discrimination and accommodation laws.  Omni filed this motion for summary judgment on November 18, 2009.  On December 19, plaintiff's First Supplemental & Amended Complaint  was filed into the record of this proceeding.  *R. 72.*  Plaintiff's Amended Complaint added allegations that Omni terminated him in retaliation for his EEOC claim and lawsuit "and were steps taken specifically to attempt justify [sic] Lejeune's disqualification from receipt of the key employee bonus he had earned."  *Id., ¶ 12.*  On December 28, Omni filed a supplemental motion for summary judgment based on the plaintiff's allegations of retaliation in the Amended Complaint.  *R. 77.*

*II. Standard for Summary Judgment*

Summary judgment is appropriate only when the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, "we view facts and inferences in the light most favorable to the nonmoving party." *Mahaffey v. Gen. Sec. Ins. Co.*, 543 F.3d 738, 740 (5th Cir. 2008). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come

---

[2] The Court has not dismissed the Interpleader as Escrow Agent from this litigation.

6

forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.*  If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[3] *Id.* at 322-23.  Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).  The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.

---

[3]  Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325.  To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.* at 322.

1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

In its first motion for summary judgment, Omni asserts that: (1) plaintiff has failed to exhaust his administrative remedies with regard to his actual disability and accommodation claims; and (2) Omni did not discriminate against plaintiff on the basis of disability or age. In its second motion for summary judgment related to plaintiff's Amended Complaint, Omni argues that plaintiff's amended allegation of retaliation is merely an attempt to create a relationship between the discrimination claims and the interpleader/bonus claim, when before there was none.[4]

In his opposition to OMNI's motions, plaintiff maintains that his termination was motivated by the fact that he was "perceived or regarded as disabled" as defined by the

---

[4] While OMNI objects to plaintiff's Amended Complaint, because it was filed after the August 20, 2009 amendment deadline, the Court's December 1, 2009 order instructed plaintiff to file his Amended Complaint by December 7, 2009. *R. 77.*

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*(ADA) or because of his age under the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621. In his amended Complaint, plaintiff contends that he was terminated in retaliation for filing the March 3, 2008 federal and October 28, 2008 state EEOC claims. Plaintiff further contends that the February 2, 2009 action taken by the Board of Directors of Omni, of officially determining that Lejeune was "'terminated for cause' within the meaning of Paragraph 3(b) of the Key Employee Escrow Agreement" was an attempt to justify plaintiff's disqualification from receipt of the key employee bonus. *R. 62; 81.*

### A. The ADA Claims

The ADA, 42 U.S.C. §§ 12102 et seq., prohibits discrimination by private employers against any qualified individual with a disability. When claiming discrimination based on disability, a plaintiff must establish that: (1) he was disabled; (2) he was none-the-less qualified to do the job; (3) an adverse employment action was taken against him; and (4) that he was replaced by or treated less favorably than non-disabled employees. If a plaintiff can assert a prima facie case for disability discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action; should the employer succeed in doing so, the burden the shifts back to the plaintiff to establish that the articulated reason was merely a pretext for discrimination. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 282 (5th Cir.2000).

An individual qualifies as disabled under the ADA if he demonstrates: (1) he has a

physical or mental impairment that substantially limited one or more of his major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such an impairment. 42 U.S.C. § 12102(2). "[T]o be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it. " *E.E.O.C. v. Chevron Phillips Chemical Co.*, LP 570 F.3d 606, 614 (5th Cir. 2009). The EEOC's regulations state that the term "major life activities" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). *Cutrera v. Board of Sup'rs of Louisiana State University,* 429 F.3d 108, 111 (5th Cir. 2005).

### A. Plaintiff's Failure to Exhaust His Administrative Remedies

Administrative review by the EEOC is normally required before the Court may review a complaint brought under Title VII. 42 U.S.C. § 2000e-5(e)(1) ("Title VII"); *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997). As with Title VII cases, an ADA plaintiff must first exhaust administrative remedies by filing a charge with the EEOC or with a state or local agency before commencing a case in federal court. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996) ("Employee must comply with ADA's administrative prerequisites prior to commencing an action in federal court against employer for violation of the ADA"). In a "deferral" state like Louisiana, an aggrieved employee has 300 days from the date of the last alleged act of discrimination to file an EEOC charge in order to preserve his right to

10

make federal claims in a district court suit on a later date.[5]  42 U.S.C. § 2000e-5(e)(1);

*Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir.1998); *Messer,* 130 F.3d at 134 & n. 2;

*Griffin v. City of Dallas,* 26 F.3d 610, 612 (5th Cir.1994).  An individual who files an EEOC

complaint and receives a Dismissal and Notice of Rights (or a right to sue notice) from the

EEOC has ninety (90) days from the date of notice to file a claim with the appropriate district

court.  42 U.S.C. 2000e-5(f)(1).

A Title VII complaint, and hence an ADA action, is limited to the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination.

*Thomas  v. Texas Dept. Of Criminal Justice, Institutional Division*, 220 F.3d 389 (5th Cir.

2000).  Essentially, any issues that plaintiff did not bring before the EEOC for consideration

and were not investigated by the EEOC during its investigation cannot be considered by a

district court.  *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).

Omni contends that despite plaintiff's allegations of discrimination in his Complaint:

(1) disability due to his "stutter, managed balance problems [ataxia] cancer and controlled

drug addiction;" (2) perceived disability due to these impairments; (3) failure to provide a

reasonable accommodation by waiving the return-to-work physical examination; and (4) due

---

[5] A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.,* 854 F.2d 762, 765 n. 1 (5th Cir.1988). The Louisiana Commission on Human Rights ("LCHR") has been funded and operating since April 1994, making Louisiana a deferral state since that time. La.Rev.Stat. Ann. § 51:2233 (West Supp.1997); G. Guidry, *Employment Discrimination Claims in Louisiana,* 45 La. B.J. 240, 241 (Oct.1997); G. Huffman, *The Louisiana Commission on Human Rights- Now It's for Real,* Briefly Speaking, Spring 1995, at 4 (New Orleans Bar Ass'n).

to his age, *R. 1, ¶¶ 4(c), 5, 6*, and his allegation of retaliation in his Amended Complaint, the only allegations actually made in his EEOC claims were of discrimination because of his disability and perceived disability and because of his age.   Thus, Omni asserts, plaintiff's claims of failure to provide reasonable accommodation and retaliation must be dismissed for failure to exhaust his administrative remedies.

The record indicates that plaintiff filed a charge of discrimination against Omni with the United States Equal Employment Opportunity Commission ("EEOC") on March 3, 2008 and with the Louisiana Commission on Human Rights on October 15, 2008. *R. 57, Exh. L; R. 62, Exh. 1*. Question number 10 of the EEOC Questionnaire addresses accommodation and asks, "Did you ask your employer for any assistance or change in working condition because of your disability?" and "Did you need this assistance or change in working condition in order to do your job?" Plaintiff responded "No" to both questions. *Id*. The EEOC Questionnaire contains nothing more related to accommodation. *Id*. Nor do plaintiff's "Initial Notes to the EEOC Charge" dated October 28, 2008 make any reference to a claim even related to Omni's failure to accommodate his disability or perceived disability. *Id*. As there is nothing in the scope of the EEOC investigation which could reasonably be expanded to include plaintiff's claim of failure to accommodate, this claim must be dismissed.[6] *Carpenter v. Wal-Mart Stores, Inc.*, 614 F. Supp. 2d 745 (W.D. La.

---

[6]    Plaintiff's January 21, 2008 medical records indicate that the only limitation Dr. Savant placed on plaintiff was climbing ladders.  She placed no limitations on him from taking neurological examinations which plaintiff asserts as the basis of his claim for failure to accommodate.

2008) (J. Drell) (adopting the Fifth Circuit's analysis in *Miller v. Southwestern Bell Telephone Co.*, 51 Fed. Appx. 928, 2002 WL 31415083, *6-*8 (5th Cir.2002) (unpublished table opinion).

Plaintiff alleges in his December 10, 2009 Amended Complaint, *R. 72,* that he was retaliated against because he filed an EEOC claim and this lawsuit.  In particular, plaintiff alleges that the Omni Board of Directors' February 2, 2009 action officially determining that plaintiff was "'terminated for cause' within the meaning of Paragraph 3(b) of the Key Employee Escrow Agreement" was a retaliatory action.  Plaintiff maintains that the Omni Board of Directors' action along with a February 2, 2009 email between his supervisor, Andy Dufrene, and Omni President, Brian Recatta, stating that plaintiff was "terminated for two reasons: 'gross misconduct' and also being unable to pass a company physical," were "steps taken to attempt [sic] justify Lejeune's disqualification from receipt of the key employee bonus he had earned." *R. 72, ¶¶ 12 & 13.*

The EEOC record is void of any mention of retaliation and provides no inference of retaliation.  A plaintiff must exhaust his administrative remedies prior to filing a retaliation claim, unless the 'retaliation claim ... arise[s] after the filing of the EEOC charge.'" *Williams v. AT&T Inc.*, 2009 WL 4884954, 4 (5th Cir. 2009) *quoting Gupta v. East Tex. State. Univ.*, 654 F.2d 411, 414 (5th Cir.1981).  Plaintiff was terminated on January 22, 2008, before he filed his EEOC complaints in March and October 2008 or this lawsuit which he filed in February 2009.  Hence, plaintiff has failed to exhaust his administrative remedies related to

13

a retaliation claim for his January 22, 2008 termination from Omni.

Plaintiff contends in his Amended Complaint that Omni's February 2, 2009 action regarding the Key Employee Escrow Agreement is related to his retaliation claim under the ADA. The Court agrees that the alleged claim is a "strained effort to combine the two claims." *R. 77.* The Key Employee Escrow Agreement, paragraph 3(b) states that "[a]ny Key Employee that is terminated for cause as determined in the sole discretion of Omni's Board of directors **shall** become ineligible to participate in the Fund." *R. 6-1. (emphasis added).* The February 2 action by the Board was required under the Agreement because of plaintiff's January 22, 2008 termination for cause, that is, refusing to take the mandatory company return to work examination after being placed on unpaid leave resulting from illegally purchasing prescription drugs at work. The elements of a prima facie retaliation claim are that: (1) the plaintiff engaged in an activity protected by the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir.2007). To satisfy the third element of a prima facie case of retaliation, plaintiff must demonstrate a causal connection between the protected activity (filing the EEOC charge) and the adverse action. *Id.* at 562. Plaintiff cannot establish a causal link between the mandatory February 2, 2009 action by the Board and filing his EEOC complaint and lawsuit, and therefore, his claim for retaliation must be dismissed.

14

### B. Plaintiff's Disability Claims Under The ADA

Plaintiff alleges in his Petition that his disabilities include stutter, "managed balance problems," cancer and "controlled drug addition." *R. 1, ¶5*.  Plaintiff's EEOC Intake Questionnaire, however, indicates only "Addiction to prescriptions medicines. Successfully treated...; Ataxia ...; and Prostate Cancer." *R. 57, Exh. L, #9*.  In his deposition testimony, plaintiff conceded that his stutter was not a factor in Omni's decision to terminate him. Moreover, the record contains no evidence that plaintiff's stuttering substantially limits any major life activity as required under the ADA.  *Bates v. Wisconsin-Dept. of Workforce Development,*  636 F.Supp.2d 797, 809 (W.D.Wis.,2009) (Plaintiff admitted that his stutter was not a disability and that it did not interfere with his ability to work or talk.).  As to plaintiff's claim that his prostate cancer was a disability, the record indicates that Lejeune was not diagnosed until February 2008, after he was terminated, and that plaintiff's supervisor, Andy Dufrene, and Omni's Human Resources Director, Lisa Jacob, stated that they were unaware of plaintiff's diagnosis with cancer. *R. 57, Exh. A, Plaintiff's Depo., pp 22-23; Exh. O, Depo. Of Dufrene, pp. 46-47; Exh. C, Declaration of Lisa Jacob*.  Thus, plaintiff's claims for discrimination under the ADA are limited to his "managed balance problems" and his "controlled drug addition."

### 1. Whether Plaintiff Was Actually Disabled

"To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that he is a qualified individual with a disability and that the negative

employment action happened because of the disability. *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1119 (5th Cir.1998) (citing 42 U.S.C. § 12112(a))." *Tabatchnik v. Continental Airlines 262 Fed.Appx.*, 674, 675 (5th Cir. 2008). Omni argues that plaintiff cannot establish the first element of a *prima facie* case for either his "managed balance problems" or his "controlled drug addition" because he does not have a disability - a physical or mental impairment that substantially limits one or more of his major life activities.  Omni supports its position with the following: (1) plaintiff responded "no" to the EEOC Questionnaire, question 1, "do you have a disability?"; (2) he did not indicate  in EEOC question 4 that the reason for his claim of employment discrimination was "Disability" rather he indicated only "Age"; (3) in EEOC question 8 he checked only "No disability but the organization treats me as if I am disabled'; (4) plaintiff testified in his October 21, 2009 deposition, "in my mind, I had no disability that would prevent me from performing my job functions," *R. 57, Exh. A, p. 21;* (5) he confirmed in his deposition that his impairments or perceived impairments did not affect his day-to-day living, *Id. at p. 22, 24*; (6) he considered himself in "top notch" health during the period in question, *Id. at p. 103*; (7) in plaintiff's December 12, 2007 letter to Omni he stated, "I am in the best health I've been in since age 20"; and, (8) on February 1, 2008, plaintiff represented to a subsequent employer that he had no disability, *Id. at Exh. P.*

Plaintiff's allegations in his Complaint are contrary to those in his opposition memorandum that he has a disability for purposes of the ADA.  In his Complaint, plaintiff characterizes his "disabilities" as "managed" balance problems and "controlled" drug

16

addition.  Plaintiff further alleges that his "balance condition (ataxia) posed no impediment to performing his job" and that he "was capable of performing and had been performing the essential functions of his job, with or without reasonable accommodation." *R. 1, ¶¶ 4(b); 5.* Now, in his opposition to the motion for summary judgment, plaintiff contends that the ataxia "substantially limits his ability to walk, stand or climb", "further limits [him] occupationally" because he was precluded from driving and climbing, and "significantly restrict the manner in which [he] can walk as compared to average persons, who commonly can walk straight lines, climb, and stand without losing their balance." *R. 62.*

Under the pertinent jurisprudence, climbing is not a major life activity under the ADA. *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 n. 2 (5th Cir. 1996) ("climbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA").  The Fifth Circuit has not made a determination on whether or not driving is a major life activity, however, other courts have held that driving is not a major life activity.  *See, Wilson v. Capital Transp. Corp.*, 234 F.3d 29, n.4 (5th Cir. 2000) ("Driving may be ubiquitous in our society, but we are not prepared to hold today that driving is a major life activity for ADA purposes: it is not on the non-exhaustive list of major life activities (including walking, seeing, and breathing) in the EEOC regulations, 29 C.F.R. § 1630.2(I), Second and Fourth Circuits have found that driving is not a major life activity. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998); *Wyland v. Boddie-Noell Enters., Inc.*, 165 F.3d 913, 1998 WL 795173,

at *2 n. (4th Cir.1998) (unpublished opinion)").

As to plaintiff's contention that his controlled balance problems impose a limitation on his ability to walk, the January 2 and 22, 2008 examination records from Dr. Savant indicate that or than an "impaired tandem walk,"[7] plaintiff was able to stand on his toes and heels without difficulty, could maintain his balance and had a steady walk.  Dr. Savant opined in her January 22 report that plaintiff was only restricted from climbing ladders and that he could return to work.[8]  Hence, Dr. Savant did not believe that plaintiff's capacity to perform any activity other than climbing differed from that of non-impaired individuals. Even assuming that the impairment noted by Dr. Savant related to plaintiff's abilities to engage in one or more of the major life activities, such insignificant impairments, if they existed as perceived, are insufficient to constitute substantial limitations. *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, (1999) (holding a mere "difference" in a person's ability to perform major life activities as compared to ordinary persons does not qualify as a "substantial limitation" unless the limitation is significant).  Moreover, plaintiff cannot satisfy its summary judgment burden by asserting in conclusory fashion that Dr. Savant's perception of him as unable safely to climb "necessarily" means that she regarded plaintiff as also "substantially limited in one or more major life activities,"  *See, e.g., Pegram v.*

---

[7] "Tandem gait is the ability to walk along a straight line placing one foot directly in front of the other, heel to toe.... In ataxic disorders, the ability to tandem walk is impaired, reflecting the tendency of such patients to compensate for their in-coordination by developing a broad based gait." *See,* Springer Netherlands, <u>A Dictionary of Neurological Signs </u>(2002).

[8] Following his termination, plaintiff states that he became employed by Omni's competitor, Analytic Stress, in a similar sales job. *R. 81.*

*Honeywell, Inc.*, 361 F.3d 272, 286 (5th Cir.2004) (rejecting a plaintiff's "conclusory allegations" that she was substantially limited in a major life activity); *Deas v. River West, L.P.*, 152 F.3d 471, 479 (5th Cir.1998) (rejecting plaintiff's "bald assertion" that because defendant's medical provider believed the plaintiff suffered from seizures, he must also have "perceived her as being substantially limited in the major life activities of seeing, hearing, and speaking").  Plaintiff has produced no evidence supporting the allegation that his ability to walk or stand was affected in any way.

As to plaintiff's "controlled drug addiction," current illegal drug users are excepted from the ADA's definition of qualified individuals. *Zenor v. El Paso Healthcare*, 176 F.3d 847, 856 (5th Cir. 1999).  A person who has used illegal drugs in the months preceding a negative employment action is properly characterized as "currently engaging in the illegal use of drugs." *Id.* Although a safe harbor is afforded to persons who stop using illegal drugs and either begin participating in a supervised drug rehabilitation program or who successfully complete such a program and no longer use illegal drugs, a person must be drug-free for a considerable time period and in recovery long enough to have become stable in order for the safe harbor to apply. *See Zenor*, 176 F. 3d at 858 (citing *McDaniel v. Mississippi Baptist Medical Center*, 877 F.Supp. 321 (S.D.Miss.1995)(holding that the ADA's safe harbor provision applies only to a long-term recovery program and requires that the individual be drug-free for a considerable period), *aff'd* 74 F.3d 1238 (5th Cir.1995) and *Baustian v. Louisiana*, 910 F.Supp. 274, 276 (E.D.La.1996) (holding that being drug free for seven

19

weeks did not satisfy statute's safe harbor provision even though plaintiff had enrolled in rehabilitation program)).

In his October 21, 2009 deposition testimony, plaintiff stated that he stopped using illegal drugs on July 31, 2007, when Dr. Hoover began treating him with Suboxone. *R. 57, Exh. A, p. 70.* Sometime thereafter, plaintiff began participating in an outpatient drug rehabilitation program at the Gloria Curran Center in Breaux Bridge, Louisiana. Plaintiff continued treatment at the Center for over a year and was therefore still under treatment on January 22, 2008, when he was terminated from Omni. *Id. at pp. 55-57.* At the time of his deposition, plaintiff continued to take Suboxone to treat his addiction. *Id. at p. 146.* As his drug use is characterized as "current," plaintiff is precluded from being a qualified person with a disability. However, even assuming *arguendo* that plaintiff was not a "current" drug user at the time of his termination, plaintiff must demonstrate that the condition substantially limits, or is perceived by his employer as substantially limiting, his ability to perform a major life function. *Zenor*, 176 F.3d at 860.

Plaintiff has "produced no evidence whatsoever that he is *prevented* or even *severely restricted* from performing [daily living] activities" because of his alleged disabilities or impairments. *Hinojosa v. Jostens, Inc.*, 128 Fed. Appx. 364, 366 (5th Cir. 2005) (emphasis in original). Rather, the record is replete with plaintiff's own representations confirming that his impairments were not substantial and created no limitations on his "major life activities." Accordingly, Omni's motion will be granted as to plaintiff's claims for disability under the

20

ADA. *Toyota Motor Mfg. Ky, Inc. V. Williams*, 534 U.S. 184, 198 (2002) (citing *Albertson's Inc. v. Kirkingburg*, 527 U.S. 557, 557 (1999)). ("[T]he ADA requires those 'claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.'").

### 2. Whether Omni Regarded Plaintiff As Disabled

Plaintiff further asserts that Omni "regarded" him as disabled. *R.62.* "In order to be 'regarded as' disabled a plaintiff must: (1) have a physical or mental impairment that does not substantially limit major life activities, but be treated as such by an employer; (2) have a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (3) have no actual impairment at all, but be treated by an employer as having a substantially limiting impairment. The plaintiff also must establish that the impairment, if it existed as perceived, would be substantially limiting." *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 281 (5th Cir. 2000) (citations omitted); *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 475 (5th Cir. 2006).

The focus of a "regarded as" claim is the reaction and perception of the relevant decision makers working with the plaintiff; the opinions or perceptions of other individuals involved are of little legal significance. *Deas*, 152 F.3d at 476 n.9. Evidence that an employer was merely aware of an impairment is not sufficient to survive summary judgment. Under the ADA, a plaintiff must show he is "regarded as" having an impairment that

21

substantially limits one or more major life activities. *Id.* at 476 (plaintiff must produce "sufficient evidence for a reasonable trier of fact to conclude that [the employer] perceived [him] as having an 'impairment' and that this impairment, if it existed as perceived by [the employer], would have substantially limited one or more of [plaintiff's] major life activities"). To survive summary judgment on a "regarded as" claim, "an employee must show that an employer regarded the employee as substantially limited in his ability to work by finding that the employee's impairment forecloses his ability to perform a class of jobs or a broad range of jobs." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 287 (5th Cir.2004). "[A]n employer may regard an employee as impaired or restricted from one position or a narrow range of jobs without regarding [him] as 'disabled.'" *E.I. Du Pont de Nemours*, 480 F.3d at 724, 729 (5th Cir. 2007). The "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Pryor v. Trane*, 138 F.3d 1024, 1027 (5th Cir.1998).

Plaintiff also alleges that he suffers from a managed balance problem which did not affect his job performance, but that Omni considered him limited in his ability to perform his job and unreasonably required him to take a company evaluation. Plaintiff, however, has offered no evidence to establish that Omni considered him as limited in his ability to perform major life activities or unable to perform a wide range of jobs. When asked in his deposition if he thought Omni perceived him as being disabled, plaintiff responded, "I don't know." When asked whether anyone at Omni made any statements to him that led him to believe the

22

company considered him to be disabled, he responded "no."  *R. 57, Exh. A, pp 62-63.*
Plaintiff's supervisor, Andy Dufrene, stated that he was unaware of plaintiff's balance
problem and that he had no concerns that plaintiff was still using drugs.  He did not know
anything about plaintiff's first and second physicals, only that  plaintiff was terminated
because he refused to take the re-employment physical Omni which "you had to pass to come
back to work."  *R. 57-6, Exh. O, p. 45.*  Omni's Human Resources Director, Lisa Jacob,
stated that after being advised by Dr. Thibodeaux that plaintiff's treating physician reported
his unsteadiness had improved, she asked Dr. Thibodeaux to perform a third exam in order
to evaluate his improvement and reassess his limitations in order to allow him to return to
work.  *Id., Exh. C.*  In her deposition, Jacob stated that she encouraged plaintiff to retake the
company physical "so he could come back to work."  *R. 81, Exh. 8, 12/30/09 Depo. of Lisa
Jacob, p. 69.*

    In his opposition memorandum, plaintiff calls into question Omni's policy of requiring
the return-to-work examination and speculates that the exam was required of plaintiff
because "[h]e was probably regarded as an older addled drug addict who was in their minds
possibly still under the influence of drugs... to the point he could not walk straight; *i.e.*,
regarded as disabled."  *R. 62.*  Plaintiff, however, has provided nothing to negate the
deposition testimony of Andy Dufrene that the exam was required for all employees returning
to work, the testimony of Lisa Jacob that the requirement to pass the company's physical
before returning to work was a "hard and fast rule," *R. 81, Exh. 5, p. 32; Exh. 8, pp. 34-35,*

or the statement of Lisa Jacob that "it was Omni's practice ... to require employees like Mr. Lejeune on extended medical leaves to undergo a return-to-work physical," *R. 57-6, Exh. C.* Plaintiff also argues that Omni's policy of requiring the return-to-work evaluation was neither job-related nor consistent with Omni's business necessity. The record indicates, however, that Dr. Thibodeaux, as Omni's company doctor, and Dr. Savant, plaintiff's own physician, opined that plaintiff could not return to work because his job required driving. Also, Andy Dufrene and Lisa Jacob testified that they had concerns of a safety issue when plaintiff returned to work because he had to drive a company vehicle. *R. 81, Exh. 5, pp. 36-37; Exh. 8, pp. 34-35.* It was only after Dr. Savant's January 21, 2008 examination that she removed the driving restriction and released plaintiff to return to work. Plaintiff's medical records indicate that his treating physician, Dr. Savant, advised him that Dr. Thibodeaux was obligated to re-exam him and that she should also perform the evaluation. Omni's requirement to require plaintiff to be re-examined by Dr. Thibodeaux was therefore job-related and was consistent with Omni's business necessity as required under 42 U.S.C. § 12112(d)(4)(B). *See, Hinojosa v. Jostens Inc.*, 128 Fed.Appx. 364, 368 (5th Cir. 2005) *citing* 42 U.S.C. § 12112(d)(4)(B) *(*"the ADA authorizes employers to inquire about an employee's ability to perform job-related functions).

Plaintiff has failed to establish that he was "regarded as disabled." Plaintiff failed to produce evidence that anyone at Omni perceived him as disabled. In order to succeed on his claim under the ADA, plaintiff would have to produce evidence demonstrating that his

24

employer "entertain[ed] some misperception regarding [plaintiff] - either that he has a substantially limiting impairment that he does not have or the impairment is not so limiting as believed." *Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir.2001). Plaintiff failed to do so.

### B. Age Discrimination Claim

Plaintiff also asserts a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, alleging that Omni discriminated against him based on his age because he was replaced with a younger employee. *R. 1, ¶ 6.* Plaintiff, however, has provided not one scintilla of evidence to support his claim that age was a motivating factor in Omni's decision to terminate him. Accordingly, plaintiff's age discrimination claim will be dismissed.

### IV. Conclusion

For the reasons stated above, the Court will grant Omni's Motion for Summary Judgment and Brice Lejeune's claims of discrimination under the ADA and the ADEA will be dismissed with prejudice. As the Court will decline to assert its supplemental jurisdiction over plaintiff's state law employment claims and the related Bill of Interpleader, the state law claims will be remanded to the Fifteenth Judicial District Court, Lafayette Parish, Louisiana and the Bill of Interpleader will be dismissed without prejudice.

25